UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| LATONYA S. SCOTT, | Civil Action No.: 19-13200 |
| | Honorable Matthew F. Leitman |
| Plaintiff | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| ANDREW SAUL, COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

_____/

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS FOR SUMMARY JUDGMENT [ECF. NOS. 16, 18]**

Plaintiff Latonya S. Scott appeals a final decision of defendant Commissioner of Social Security (Commissioner) denying her application for disability insurance benefits (DIB) under the Social Security Act. Both parties have filed summary judgment motions, referred to this Court for a report and recommendation under 28 U.S.C. § 636(b)(1). After review of the record, the Court finds that the administrative law judge's (ALJ) decision is supported by substantial evidence, and thus **RECOMMENDS** that:

- the Commissioner's motion [ECF No. 18] be **GRANTED**;
- Scott's motion [ECF No. 16] be **DENIED**; and

- the Commissioner's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

I.  **BACKGROUND**

A.  **Scott's Background and Disability Applications**

Born in August 1971, Scott was 44 years old on her alleged onset date in December 2015.  [ECF No. 12-5, PageID.220].  She applied for benefits in October 2016.  [*Id.*].  Scott had previous work as a technician.  [ECF No. 12-3, PageID.138].  She claimed to be disabled from degenerative disc disease, asthma, vertigo, migraine headaches, depression, anxiety, and severe shoulder pain.  [*Id.*, PageID.125-126].

After the Commissioner denied her disability application initially, Scott requested a hearing, which took place in April 2018, and during which she and a vocational expert (VE) testified.  [ECF No. 12-2, PageID.65-105].  In a September 2018 written decision, the ALJ found Scott not disabled.  [*Id.*, PageID.47-60].  The Appeals Council denied review, making the ALJ's decision the final decision of the Commissioner, and Scott timely filed for judicial review.  [*Id.*, PageID.36-38; ECF No. 1].

B.  **The ALJ's Application of the Disability Framework Analysis**

A "disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Commissioner determines whether an applicant is disabled by analyzing five sequential steps. First, if the applicant is "doing substantial gainful activity," he or she will be found not disabled. 20 C.F.R. § 404.1520(a)(4). Second, if the claimant has not had a severe impairment or a combination of such impairments for a continuous period of at least 12 months, no disability will be found.[1] *Id.* Third, if the claimant's severe impairments meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, the claimant will be found disabled. *Id.* If the fourth step is reached, the Commissioner considers its assessment of the claimant's residual functional capacity (RFC), and will find the claimant not disabled if he or she can still do past relevant work. *Id.* At the final step, the Commissioner reviews the claimant's RFC, age, education, and work experiences, and determines whether the claimant could adjust to other work. *Id.* The claimant bears the burden of proof throughout the first four steps, but the burden shifts to the Commissioner if

---

[1] A severe impairment is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities." § 1520(c).

3

the fifth step is reached. *Preslar v. Sec'y of Health & Human Servs.*, 14 F.3d 1107, 1110 (6th Cir. 1994).

Applying this framework, the ALJ concluded that Scott was not disabled. At the first step, the ALJ found that Scott had not engaged in substantial gainful activity since December 23, 2015. [ECF No. 12-2, PageID.53]. At the second step, the ALJ found that Scott had the severe impairments of "major depressive disorder; disorder of the right shoulder (tendinosis of the right upper extremity and subacromial spur with right mid trapezial muscle spasm/trigger point) with myofascial muscle pain, subacromial bursitis, and AC joint injury, cervical radiculopathy, and arthritis of the right AC joint; osteoarthritis of the knees; and a history of degenerative disc disease, and asthma." [*Id.*]. The ALJ determined that Scott's alleged impairments of migraine headaches, vertigo, and dyspareunia were non-severe. [*Id.*, PageID.53]. Next, the ALJ concluded that none of her impairments, either alone or in combination, met or medically equaled the severity of a listed impairment. [*Id.*].

Between the third and fourth steps, the ALJ found that Scott had the RFC to perform sedentary work as 20 C.F.R. 404.1567(a) except:

> must be given the opportunity to alternate between sitting and standing up to four times an hour; no more than occasional pushing and pulling; only occasional reaching overhead with left dominant extremity and no overhead reaching with the non-

4

>  dominant right upper extremity; no more than frequent grasping/gross manipulation with the non-dominant right upper extremity; no more than occasional climbing of stairs, balancing, crouching, crawling, kneeling, and stooping/bending; must avoid workplace hazards such as dangerous, moving machinery, unprotected heights, concentrated exposure to respiratory irritants, and extremes in temperature and humidity; no climbing of ladders, ropes, or scaffolds; limited to low stress work, which is work that is self-paced and not at a production rate and where the job duties are not interdependent with those of coworkers; limited to simple, routine, repetitive work; and no more than occasional interaction with supervisors, coworkers, and the general public.

[*Id*., PageID.54-55].  At step four, the ALJ found that Scott could not perform her past relevant work.  [*Id*., PageID.58].  But at the final step, after considering Scott's age, education, work experience, RFC, and the testimony of the VE, the ALJ concluded that she could perform jobs that existed in significant numbers in the national economy, including administrative support clerk, packer, and sorter.  [*Id*., PageID.59].  The ALJ thus found Scott not disabled.  [*Id*., PageID.60].

## II.    ANALYSIS

### A.

Under § 405(g), this Court's review is limited to determining whether the Commissioner's decision is supported by substantial evidence and conformed with proper legal standards.  *Gentry v. Comm'r of Soc. Sec.*, 741 F.3d 708, 722 (6th Cir. 2014).  Substantial evidence is "more than a

5

scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks and citation omitted). Only the evidence in the record below may be considered when determining whether the ALJ's decision is supported by substantial evidence. *Bass v. McMahon*, 499 F.3d 506, 513 (6th Cir. 2007).

Scott argues that the ALJ erred by finding that she did not meet Listings 12.04 and 1.04, and by not including her medication symptoms in the RFC. [ECF No. 16, PageID.812-824]. The Court finds Scott's arguments unavailing and that the ALJ's decision should be affirmed.

**B.**

Scott first argues that the ALJ failed to sufficiently articulate whether her impairments met or medically equaled the requirements of Listings 12.04 and Listing 1.04. [ECF No. 16, PageID.812-819].

"Listing of Impairments, located at Appendix 1 to Subpart P of the regulations, describes impairments the SSA considers to be 'severe enough to prevent an individual from doing any gainful activity, regardless of his or her age, education, or work experience.'" *Reynolds v. Comm'r of Soc. Sec.*, 424 F. App'x. 411, 414 (6th Cir. April 1, 2011) (quoting 20 C.F.R.

6

§ 404.1525(a)). "A claimant must satisfy all of the criteria to meet the listing." *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 653 (6th Cir. 2009) (citing 20 C.F.R. § 404.1525(c)(3).

An impairment is medically equivalent to a listing if "it is at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 1526(a). "An administrative law judge must compare the medical evidence with the requirements for listed impairments in considering whether the condition is equivalent in severity to the medical findings for any Listed Impairment." *Reynolds,* 424 F. App'x at 415. But to support her argument that the ALJ committed reversible error by failing to properly analyze a listing, Scott "must point to specific evidence that demonstrates [she] reasonably could meet or equal every requirement of the listing." *Smith–Johnson v. Comm'r of Soc. Sec.*, 579 F. App'x 426, 432 (6th Cir. 2014). "Absent such evidence, the ALJ does not commit reversible error by failing to evaluate a listing at Step Three." *Id.* at 433.

### *Listing 1.04*

Scott contends that the ALJ failed to adequately address whether her impairments met or medically equaled Listing 1.04. [ECF No. 16, PageID.813-815]. She correctly notes that the ALJ's stated in conclusory form that she failed to meet or equal Listing 1.04. [ECF No. 12-2,

7

PageID.53]. But the Court must consider the whole record when examining whether an ALJ's listing decision is supported by substantial evidence. "The language of 20 C.F.R. § 404.1526 does not state that the ALJ must articulate, at length, the analysis of the medical equivalency issue. It states that the ALJ should review all evidence of impairments to see if the sum of impairments is medically equivalent to a 'listed impairment.'" *Bledsoe v. Barnhart*, 165 F. App'x 408, 411 (6th Cir. 2006); *see also Bradford v. Sec'y of Dep't of Health & Human Servs.*, 803 F.2d 871, 873 (6th Cir. 1986) ("Within the record was substantial evidence indicating plaintiff did not meet the listings."). So the ALJ's conclusory language at step two is not dispositive.

And the evidence that Scott points to does not show that the ALJ committed reversible error when finding that her impairments did not meet or equal the severity of Listing 1.04. To meet that listing, Scott must establish that she has a disorder of the spine with "[e]vidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising

test (sitting and supine)." 20 C.F.R. Pt. 404, Subpt. P, App. 1, Listing 1.04A.

Scott cites MRI imaging from 2018 showing focal disk herniation that revealed a mildly compressed the ventral aspect of the cord at T7-T8. [ECF No. 12-10, PageID.775-776]. But the other evidence Scott relies on does not establish that the severity of her back impairment meets or medically equals Listing 1.04. Scott describes most of the records she cites as evidencing her pain symptoms; she does not describe those records as showing the objective evidence described in Listing 1.04. [ECF No. 16, PageID.814]. She then points to a record from March 2014 that mentioned "[l]imited flexion," but that record also said that Scott had good extension and rotation, good strength in all extremities, a negative straight leg test, and sensation that was grossly intact. [ECF No. 12-7, PageID.314]. Scott refers to a September 2015 record as showing restricted motion, but that record describes her lumbar spine as being "within normal limits." [*Id.*, PageID.336-337]. The range of motion was normal, she had full muscle strength, and a test for nerve root disease was negative. [*Id.*].

Scott cites the portion of a February 2014 report that described her subjective symptoms to support her claim of motor, sensory, or reflex loss.

9

[ECF No. 16, PageID.815, citing ECF No. 12-7, PageID.302]. But the objective findings in that report undermine her argument that her impairments meet or equal Listing 1.04. She had a normal gait and station, and the ability "to walk on heels and toes without difficulty"; her sensation was "intact to light touch/pinprick in all distributions"; she had normal strength, tone, and bulk in all extremities; her reflexes were normal; and the surgeon interpreting her MRI, Muwaffak Abdulhak MD., saw "[n]o convincing cord compression" or cord signal. [*Id.*, PageID.304-305]. Dr. Abdulhak wrote that Scott presented with "nonspecific axial symptoms" and that she was not a candidate for surgery. [*Id.*, PageID.305]. At Scott's request, he wrote a note for her to return to work with restrictions. [*Id.*].

Another doctor agreed in March 2014 that Scott could return to work with restrictions "as her MRI showed mild cord compression," and her musculoskeletal examination was mostly normal. [ECF No. 12-7, PageID.314-315]. She had good strength in all extremities, a negative straight leg test, and grossly intact sensation. [*Id.*]. Another examination of Scott's musculoskeletal and neurological symptoms showed a normal spine, a range of motion within normal limits, full strength, a negative nerve root disease test, a normal gait, and normal sensory testing. [*Id.*, PageID.336-337]. Yet Scott cites both of those reports as supporting her

10

claim that her impairments met or equal Listing 1.04. [ECF No. 16, PageID.815].

Scott has failed to point to specific evidence that would support a finding that her impairments meet or equal Listing 1.04, and she has thus failed to show reversible error. *Smith–Johnson,* 579 F. App'x at 432-33.

### *Listing 12.04*

Scott next argues that the ALJ erred by finding that her mental impairments do not meet Listing 12.04, which applies to depressive disorders. That listing requires an assessment of "paragraph B criteria." 20 C.F.R. pt. 404, Subpt. P, App. 1, Listings 12.04. As the ALJ explained:

> To satisfy the 'paragraph B' criteria, the mental impairment must result in at least one extreme or two marked limitations in a broad area of functioning, which are understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; or adapting or managing themselves. A marked limitation means functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited. An extreme limitation is the inability to function independently, appropriately or effectively, and on a sustained basis.

[ECF No. 12-2, PageID.54].

The ALJ found that Scott had moderate limitations in her abilities to understand, remember, or apply information; in interacting with others; and in concentrating, persisting, or maintaining pace. [*See* ECF No.12-2, PageID.54]. She found that Scott had mild limitations in adapting or

11

managing oneself. [*Id*.]. With no marked or extreme limitations, Scott did not meet the paragraph B criteria. [*Id*.].

When addressing Scott's mental impairments later in the decision, the ALJ found that Scott's "complaints were primarily related to financial and family issues, not an underlying mental health impairment." [ECF No. 12-2, PageID.58]. The ALJ noted that, in May 2016, Scott "reported feeling better and looking to make changes once she was off probation." [*Id.,* citing ECF No. 12-7, PageID.385]. The ALJ concluded that despite Scott's mental health complaints, there were no specific deficits mentioned and the medical records did not "document anything that would preclude working on a sustained basis." [ECF No. 12-2, PageID.58].

The ALJ also gave great weight to the reviewing consultant J. Csokasy, Ph.D., who found that Scott was able to perform simple, routine tasks on a sustainable basis even with her moderate limitations in concentration, persistence, or pace. [*Id.*; *see also* ECF No. 12-3, PageID.134-140]. Many of the mental health treatment records predated Dr. Csokasy's assessment, but the ALJ found that the full record was consistent with Dr. Csokasy's opinion. [*Id.*]. This conclusion is supported by substantial evidence.

In February 2016, Scott reported that her symptoms were "worsening," but a medical report notes that therapy "led to some improvement in symptoms" and there was "no concern with mania and psychosis." [ECF No. 12-7, PageID.371]. Scott was negative for suicidal ideas and denied hopelessness, and she was found to have normal affect and thought content. [*Id.*]. Her prognosis was "good." [*Id.*, PageID.372].

The following month, Scott reported that her symptoms and depression were improving but she continued to isolate herself. [*Id.*, PageID.377]. The medical reports month after month state that Scott's grooming, hygiene, and eye contact were "good," and she was alert and cooperative with normal language, affect and perceptions. [*Id.*, PageID.378, 383, 398, 408]. Repeatedly, the medical records during Scott's therapy said, "Overall, the patient's condition is slowly improving." [*Id.*, PageID.379, 382, 383, 395, 397, 399, 407, 425]. And in late 2016, Scott's alleged mental impairments were "improving at an expected pace." [*Id.* PageID.428].

The ALJ also addressed Scott's global assessment of functioning (GAF) scores. [ECF No. 12-2, PageID.58]. The ALJ gave little weight to the GAF score of 45 reported in September and October 2016, and in January and April 2017. [*Id.*]. Other than those months, Scott's GAF

13

scores were between 55 and 65, and she was given a score of 65 several times from May 2013 to April 2017.  [ECF No. 12.7, PageID.365, 369, 373, 374, 376, 379, 381, 384, 385, 395, 401, 422, 425, 438, 448, 483].  Thus, the ALJ noted that Scott "never had a GAF score in the severe range for a 12 month period (all reports noted that her highest GAF in the last 12 months was 65, which is in the mild range)."  [ECF No. 12-2, PageID.58].

To support her argument that the ALJ committed reversible error, Scott cites records that she says corroborate that she experienced a depressed mood, a diminished interest in activities, appetite disturbance with weight change, sleep disturbance, feelings of guilt or worthlessness, and thoughts of death and suicide.  [ECF No. 16, PageID.815-817].  Scott's focus on those symptoms is misplaced; the paragraph B criteria address limitations on *functioning*.  20 C.F.R. Pt. 404, Subpt. P, App. 1, 12.00F. The only functional category Scott refers to is her concentration.  [ECF No. 16, PageID.817].  Several records Scott relies on mentioned decreased concentration as a symptom, but the objective testing showed Scott to have normal results, including a "normal attention span."  [ECF No. 12-7, 397-398, 408; ECF No. 12-9, PageID.554, 577-558, 612-613, 669-670].

Scott has not pointed to specific evidence to show that her mental impairments caused marked or extreme limitations in functioning, and she

14

has failed to show reversible error. *Smith–Johnson,* 579 F. App'x at 432-33.

### C.

Lastly, Scott argues that the ALJ disregarded her testimony that her medications make her sleepy. [ECF No. 16, PageID.821-824, citing ECF No. 12-2, PageID.83]. In addition to this testimony, Scott relies on a March 2014 report in which she was advised not to operate heavy machinery due to possible "sedation" from medication; and a in February 2017 record showing she reported that Gabapentin made her fatigued. [*Id.*, PageID.821, citing ECF No. 12-7, PageID.315; ECF No. 12-9, PageID.560].

ALJ's must consider the side effects of the claimant's medication. 20 C.F.R. § 404.1529(c)(3). But there is no mandate that the ALJ mention medical side effects in the written decision. *Stec v. Comm'r of Soc. Sec.*, 432 F. Supp. 3d 719, 727 (E.D. Mich. 2020). And Scott's medical records do not confirm that her medication made her sleepy. Instead, the reports repeatedly said that Scott's therapeutic interventions, including medication, were "not associate[d] with side effects." [ECF No. 12-7, PageID.371, 377, 382, 397, 412; ECF No. 12-8, PageID.441, 451, 458; ECF No. 12-9, PageID.553, 612]. "Where, as here, a claimant testifies that she

15

experiences medication side effects, but the medical records make no indication that she reported medication side effects to her physicians, an ALJ does not err in finding that the claimant suffered no adverse side effects from her medications." *Nyhus-Dell v. Comm'r of Soc. Sec.*, No. 18-CV-10132, 2019 WL 2051895, at *4 (E.D. Mich. Feb. 5, 2019), *adopted*, 2019 WL 1349617 (E.D. Mich. Mar. 26, 2019) (citing *Essary v. Comm'r of Soc. Sec.*, 114 F. App'x 662, 665-66 (6th Cir. 2004).

Scott argues that it is not her burden to "prove that she told her doctors, necessarily, that her medications made her sleepy"; she says that "[o]ne just needs to read the common side effects" of all her medications. [ECF No., PageID.821]. The Court disagrees. As the claimant, Scott bears the burden of showing that she requires a more restrictive RFC. *Jordan*, 548 F.3d at 423. She cannot rely on the common side effects of her medication to meet that burden. *See Schwalm v. Guardian Life Ins. Co. of Am.*, 626 F.3d 299, 313 (6th Cir. 2010) (finding that printout of potential side effects from pain medication did not show that plaintiff was disabled because of side effects); *Soto v. Comm'r of Soc. Sec.*, No. 17-10054, 2018 WL 2181098, at *9 (E.D. Mich. Mar. 2, 2018), *adopted*, No. 17-CV-10054, 2018 WL 1466087 (E.D. Mich. Mar. 26, 2018) (rejecting plaintiff's reliance

on common side effects of medication when plaintiff denied to medical providers that she experienced those side effects).

Scott has failed to show that she required a more restrictive RFC because of medication side effects.

### III. CONCLUSION

The Court **RECOMMENDS** that the Commissioner's motion [ECF No. 18] be **GRANTED**; that Scott's motion [ECF No. 16] be **DENIED**; and the ALJ's decision be **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

Dated: February 16, 2021

s/Elizabeth A. Stafford
ELIZABETH A. STAFFORD
United States Magistrate Judge

### NOTICE TO THE PARTIES ABOUT OBJECTIONS

Within 14 days of being served with this report and recommendation, any party may serve and file specific written objections to this Court's findings and recommendations.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2).  If a party fails to timely file specific objections, any further appeal is waived.  *Howard v. Secretary of HHS*, 932 F.2d 505 (6th Cir. 1991).  And only the specific objections to this report and recommendation are preserved for appeal; all other objections are waived.  *Willis v. Secretary of*

*HHS*, 931 F.2d 390, 401 (6th Cir. 1991).

Each **objection must be labeled** as "Objection #1," "Objection #2," etc., and **must specify** precisely the provision of this report and recommendation to which it pertains. Within 14 days after service of objections, **any non-objecting party must file a response** to the objections, specifically addressing each issue raised in the objections in the same order and labeled as "Response to Objection #1," "Response to Objection #2," etc. The response must be **concise and proportionate in length and complexity to the objections**, but there is otherwise no page limitation. If the Court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on February 16, 2021.

s/Marlena Williams
MARLENA WILLIAMS
Case Manager